[L. A. No. 3354. In Bank.—October 8, 1914.]

## JULIA P. WARDEN et al., Respondents, v. CITY OF SOUTH PASADENA, Appellant.

MUNICIPAL CORPORATION—DRAIN ACROSS STREET TO CARRY WATER NATURALLY FLOWING IN GULLY—INADEQUACY OF PRIVATE EXTENSION OF DRAIN—NONLIABILITY OF CITY FOR OVERFLOW.—A municipal corporation which had placed a drain pipe under a street to carry water naturally flowing in a cross gully from the upper to the lower side thereof, which pipe was of sufficient size and strength for that purpose, if the land above and below had been left in its natural condition, or if extensions connected with it had been of the same size and properly constructed, is not liable to an adjoining lower proprietor for damages to his lot from an overflow of the water which resulted from the inadequacy, both in size and method of construction, of an extension of the pipe, made across the lot by a prior owner thereof, without the authority of the municipality.

ID.—ACTION AGAINST MUNICIPALITY—SUBSEQUENT STATEMENTS OF CITY OFFICIALS—EVIDENCE.—In an action against the municipality to recover for such damages, statements made after the injury by the defendants' street superintendent and city engineer, to the effect that the city had put in the pipe extending under the lot, do not bind the city nor constitute evidence against it.

ID.—HEARSAY—NARRATION BASED ON INFORMATION DERIVED FROM OTHERS.—Statements on that subject, made by the city engineer, who did not hold that office at the time the pipes were laid, purporting to be a mere narration of information and not a statement of fact, are mere hearsay.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Gavin W. Craig, Judge.

The facts are stated in the opinion of the court.

John E. Carson, City Attorney, for Appellant.

John F. Poole, for Respondents.

SHAW, J.—The defendant appeals from the judgment and from an order denying its motion for a new trial.

The cause of action sued on arose, originally, in favor of Mrs. T. P. Jackson. The complaint alleges that it was assigned by Mrs. Jackson to the plaintiffs. The evidence shows that it was assigned to the plaintiff, Julia P. Warden, and neither the complaint, the findings, nor the evidence show that the two plaintiffs sustained the relation of husband and wife, nor that the cause of action was the separate property of Julia P. Warden. No objection is made on this account by the defendant, and, therefore, for purposes of this decision, we will assume that if the plaintiffs are husband and wife, the subject of this litigation became the separate property of Julia P. Warden and that C. D. Warden is a nominal party only.

The complaint alleges that Mrs. Jackson was the owner of a lot in the city of South Pasadena, situated at the southwest corner of Foothill Street and Fair Oaks Avenue, on which she had erected a dwelling-house in which she resided; that prior to her purchase of the lot the city constructed and placed a drain pipe across Foothill Street, in front of said lot, and across the said lot; that said drain pipe was defectively constructed and that, during a heavy rain storm, the drain pipe broke where it crossed Foothill Street and thereby the said lot and residence were flooded with the water from the drain pipe and greatly damaged.

The answer admitted that the city had constructed and placed a drain pipe across Foothill Street, but denied that it had constructed or placed any pipe across the said lot, or that the drain pipe across Foothill Street broke, or that it was defectively constructed.

The evidence showed that before Mrs. Jackson acquired the lot, one Hardison owned the land on both sides of Foothill Street, including this and other lots; that a gully or depression some eight or ten feet deep, formed by storm water, extended through this land and the lot in question, crossing said street at the place where the drain pipe was afterwards placed; that the city at one time placed a wooden box or culvert across the street to carry the water of the gully under

the street, and that during Hardison's ownership the city, being about to grade and improve the street, took out the wooden culvert and laid in its place a sixteen-inch vitrified iron drain pipe, composed of joints two and a half feet long, being the pipe in question. This pipe was put there solely for the purpose of carrying under the street the water naturally flowing in the gully. It was well laid, properly connected and of sufficient size to carry the water and withstand all pressure that would be put upon it from storm waters flowing therein under the natural conditions existing at the time it was laid. After laying this pipe the street was by the city graded and filled in across the depression so that its surface was ten feet above the pipe. After this was done, Hardison, the owner, began the improvement of his land. He put in a twelve-inch drain pipe in the gully above Foothill Street for a distance of over four hundred feet, connecting it at the street with the upper end of the sixteen-inch pipe. Below the street the gully ran through the lot afterwards sold to Mrs. Jackson. In this part of the gully Hardison also laid a twelve-inch pipe extending from the street line into the lot beyond the place where the house was afterwards erected. This pipe he connected with the lower end of the sixteen-inch pipe, at the street line, by inserting the twelve-inch pipe into the sixteen-inch pipe and cementing around the connection. He did this without the consent of the city and over the protest of its street superintendent, who also, at the time, warned him that he should not connect a twelve-inch pipe with a sixteen-inch pipe. The city had no connection whatever with the laying of the pipe in the land of Hardison. Hardison used inferior pipe. Some of it was broken and he patched it with other pieces of pipe and cement. After laying this drain pipe in his land, Hardison filled in the gully to a level with the surface of the street, covering the pipe and leveling his ground so as to make it suitable for building lots, and thereupon he sold the lot in question to Mrs. Jackson.

She knew that the lot had been filled and leveled and that the twelve-inch pipe had been laid in it, and, with that knowledge, she built the house and occupied it.

There was evidence that the kind of pipe used by the city and by Hardison is not designed to stand pressure, and that it will not stand a pressure of a head of water exceeding

eight or ten feet, but that it is well adapted for drainage pur-
poses if properly laid; also that when a twelve-inch pipe
is used as an outlet for a sixteen-inch pipe it tends to cause
an obstruction at the junction when there is a flood of water;
that this would cause the water to back up in the pipe to its
head and that the resulting pressure would be the greatest
upon the sixteen-inch pipe just above the junction. The
head of the pipe at the upper end above the street crossing was
some twenty feet higher than its elevation at the crossing.
There was also evidence that the twelve-inch pipe leaked
freely below the junction, and that around the house the lot
in question had settled very much prior to the excessive flood
complained of. An examination of the sixteen-inch pipe the
day after the flood showed that it had not broken, but that
there was a small crack in the top of one joint, barely wide
enough to admit a case knife blade, through which some
water had flowed, but that not enough could have come
through this crack to have caused any damage to Mrs. Jack-
son's property.

There is no tenable theory on which the city can be held
liable for this damage. The case is unlike the case of *Kramer*
v. *Los Angeles*, 147 Cal. 668, [82 Pac. 334], on which the
plaintiffs rely. In the city of Los Angeles there was once a
natural gully or arroyo, extending through a considerable
portion of the city over private property, which carried much
water in times of flood. The city, with the consent of the
lot owners, had built therein, and was maintaining, a public
storm drain which, from its imperfect construction, burst and
flooded Kramer's premises. The decision was that the city,
having built this drain, was bound to use due care in its con-
struction and in maintaining it, and that it was liable for the
damage caused by its defective construction. In the case at
bar the city of South Pasadena had done nothing more than
simply to place a drain or culvert under the street to carry
water from the upper to the lower side thereof. It is not
claimed that this pipe was not of ample size and sufficiently
strong for that purpose, if the land above and below had been
left in its natural condition, or if extensions connecting with
it had been of the same size and properly constructed. The
evidence was to the effect that the small crack in the city pipe
was caused by too much pressure of water and that this
pressure was due to the negligence of Hardison, the plaintiff's

predecessor in interest, in connecting a twelve-inch pipe as an outlet to a sixteen-inch pipe. There was no drainage system built or maintained by the city which included the pipes under Mrs. Jackson's lot. The city had not undertaken to maintain these pipes and it was under no obligation to do so. The fault was that of Hardison, for whose acts the city was not responsible. His successors, so far as this matter is concerned, stand in his shoes, and must suffer the consequences of his negligence. They have no recourse on the city.

There was some testimony given by Mrs. Jackson, for the plaintiff, to the effect that on the day after the injury, the defendant's street superintendent and city engineer had informed her that the city had put in the pipe extending under the lot. Neither of them were at that time acting in behalf of the city, nor speaking for it, and the statements so made, even if they made them, would not bind the city nor constitute evidence against it. The street superintendent testified that he did not make the statement, and it appeared that the statements of the engineer on their face purported to be a mere narration of information and not a statement of fact. The evidence showed without conflict that Hardison had laid the pipe as above related. The city engineer did not hold that office at the time the pipes were laid, and whatever he may have said on the subject was mere hearsay. There was no substantial conflict in the evidence on the material facts in the case. The court erred in holding the city liable for the damage.

The judgment and order are reversed.

Sloss, J., Melvin, J., Lorigan, J., Henshaw, J., and Sullivan, C. J., concurred.