# JAMES JOYCE v. VILLAGE OF JANESVILLE AND OTHERS.[1]

January 21, 1916.

Nos. 19,582—(208).

**Nuisance — statutory notice to village — injunction.**

In this action to enjoin the defendant village and its officers from discharging sewage upon plaintiff's land, the court found that a ditch, maintained by the village for surface drainage, collected the overflow from cesspools, sinks and septic tanks and, through a tile drain constructed by the village, discharged the same together with surface waters upon and over plaintiff's land to its detriment and injury. It was also found that the village officers had no knowledge of the discharge of sewage into the ditch and that the village was not responsible therefor. It is *held:*

(1) The invasion of plaintiff's land as found by the court constituted a nuisance entitling plaintiff to an injunction against its continuance by the village.

(2) That if notice was necessary before suit, the officers of the village had knowledge and notice thereof, and the finding to the contrary is not sustained by the evidence, nor was the defense of want of notice made.

(3) If a municipality invades private property and creates a nuisance thereon, the injured party is entitled to relief and it is immaterial how or by what means the municipality or its officers caused the injury.

(4) When the main purpose of the suit is to enjoin a city or village from maintaining a private nuisance, the written notice prescribed by section 1786, G. S. 1913, need not be served before suit. Such action is not predicated upon negligence of the municipality or its officers.

(5) For a continuing nuisance there is no adequate remedy at law

Action in the district court for Waseca county to abate a nuisance and to restrain defendant village, its president, councilors and village recorder, from running sewage upon plaintiff's land   or upon   that   adjoining, and to recover $300 damages.   The facts are stated in the opinion.   The

[1] Reported in 155 N. W. 1067.

Note.—As to injunction against nuisance maintained by municipality, see note in 23 L.R.A. 201.

case was tried before Childress, J., who made findings and ordered judgment dismissing the action. From an order denying his motion for a new trial, plaintiff appealed. Reversed.

*Henry M. Gallagher,* for appellant.

*L. D. Rogers* and *Moonan & Moonan,* for respondents.

HOLT, J.

The action is brought to enjoin the defendant village and its officers from discharging sewage and filth upon plaintiff's lands. Some damages are also claimed. The court made findings and directed judgment in favor of defendant. The appeal is from the order denying a new trial.

It appears that the village of Janesville contains about 1,200 inhabitants and is located on high ground east of the valley which serves as an outlet to Lake Elysian. This valley used to be an extensive bog often submerged, but the whole is now in a fair way of being reclaimed because of the public drainage put through there a few years ago, and the land is now adapted for pasturage, hay and even for field crops. Some six months before this suit was brought plaintiff bought 1¾ acres of land on the edge of the bog. This piece of land adjoins a highway on the westerly boundary line of the village. When plaintiff made the purchase he knew that the drain herein referred to discharged offensive matters upon the land.

The complaint proceeds on the theory that the village commits a continuous trespass by discharging through and by means of a ditch and tile drain sewage and filth upon plaintiff's property. At the trial plaintiff admitted that it was not claimed that any injury resulted from the mere surface water cast upon his land by means of this drainage system of the village. From the court's findings it appears that in 1910 the village constructed a tile drain from block 13 in a northwesterly direction, thence west along First street, thence across such street down to Second street and westerly on said street to within a few feet of plaintiff's land; that prior to the construction of the drain large quantities of surface water accumulated on block 13 and adjacent blocks; that the natural drainage from the village and these blocks is west toward and upon plaintiff's land, and that this tile drain does not increase but merely accelerates the flow of such surface water. We now

quote the part from the findings which will adequately disclose the matters which must control this decision, viz.:

"That said tile drain connects at its place of beginning with an open ditch and that in blocks eleven and fourteen of the said original town some private individuals have constructed cesspools and that the overflow from said cesspools is conducted by natural and artificial drains and empties into the said open ditch and thence into said tile drain and that in blocks eleven, fourteen and thirty-two some private individuals allow and permit considerable filth to discharge from said blocks to the alleys and streets adjacent and to be conducted by natural and artificial drains into said open ditch and thence into said tile drain.

"That said open ditch and said tile drain were constructed solely for the purpose of taking care of the surface waters and are necessary for the protection of the health and well-being of the inhabitants of the defendant village, and that the said acts of said private individuals in permitting their cesspools to overflow and said filth to discharge from said blocks eleven, fourteen and thirty-two into said open ditch and tile drain, were wholly without the knowledge, consent or permission of these defendants or any of them.

"That the overflow from said cesspools and said filth from said blocks eleven, fourteen and thirty-two pass through said tile drain and to and upon the plaintiff's said lands but the same does so without the knowledge, consent, sanction or permission of these defendants or any of them.

"That the flow of the surface waters upon the plaintiff's said land has not in any manner been increased by said tile drain, but has only been accelerated and the plaintiff's said land has not in any manner been damaged by the flow of said surface waters or by any acts of these defendants or any of them.

"That the overflow from said cesspools and the discharge of said filth upon the plaintiff's said land through said tile drain are injurious and detrimental to said lands and are damaging to the plaintiff, but that said defendants are not responsible therefor.

"That the said lands and premises of said plaintiff are valuable, but that said defendant village is solvent and amply able to pay for any damages done to the plaintiff's said property."

It is thus seen that the open ditch is permitted to collect a quantity of filth and sewage which, with the surface water, is discharged upon plaintiff's land to its detriment. In fact a nuisance is created thereon within the definition of section 8085, G. S. 1913. True, the court finds that this is not done with the knowledge, sanction or permission of the village or its officers, and that neither the village nor its officers are responsible therefor; but the assignments of error challenge the correctness of these findings. The conclusion of law denying relief to plaintiff is also questioned.

We are unable to reconcile the finding, that there was discharged from the tile drain upon plaintiff's property to its detriment a quantity of polluted matter, with the finding that this occurred without the knowledge or sanction of defendants. The evidence is conclusive that upon plaintiff's complaint all the officers of the defendant village did investigate the matter, some of them going repeatedly for that purpose to the outlet of the drain. It is apparent that the village furnishes its inhabitants with a water supply, for the evidence discloses that several homes and business buildings are equipped with modern water and toilet conveniences, and that the overflow or discharge from sinks, cesspools and septic tanks necessarily must reach and gather in the open ditch dug and kept in repair by the village. Indeed, the men who cleaned it out testified to tile drains from these private cesspools or septic tanks opening directly into the ditch. We think it clear that, prior to the institution of this action, the village through its officers had full knowledge of the situation—knew that the filth from the private cesspools collected in the ditch, as found by the court, and that the same was cast by means of the tile drain upon plaintiff's land, there creating a nuisance. However that may be, we do not think that a municipality which, by some construction or means under its control, invades the premises of a person or creates a nuisance thereon, can defeat an action to enjoin or abate the trespass or nuisance, by allegation or proof that it or its officers had no knowledge thereof. This may not always hold true in actions at law for damages. But, in this case, a complete answer to defendant's contention is that no attempt was made by pleading or proof to oppose the injunction sought on the ground that there had been no notice or request to abate the nuisance prior to suit. Even a continuer of a nuisance waives

the defense of want of notice to abate, if he bases his defense upon other grounds than want of notice. Bartlett v. Siman, 24 Minn. 448.

Defendant's counsel contends that no nuisance was created. It is undoubtedly true that the court could properly have so found, but the finding is to the contrary. This court can neither disregard a material finding of the trial court, nor substitute another for the one made.

If by means of this drain a nuisance was cast upon plaintiff's land, he is entitled to injunctive relief, unless the village is not to be held responsible for the filth and waste discharged from private septic tanks, cesspools, sinks or outhouses into its ditch and drain. On the proposition of responsibility for a nuisance created upon another's property, it does not seem to us material whether it be done by means of an ordinary city sewer, or by means of an open ditch and drain like the present. To the knowledge of the defendant the ditch collects sewage. It was so located that of necessity it must gather all discharges from cesspools, and all offal from the village. The counsel for respondents relies upon Noble v. Village of St. Albans, 56 Vt. 522, where it was held that the village was not liable in damages by reason of sewage discharged upon the plaintiff's property from a culvert, designed to carry the surface water from one side of the street to the other, where it did not appear that the village knew that a private owner had connected his toilet with the culvert. No relief against a continuance of the pollution was asked. Here, as we have stated, the finding that the village had no knowledge is not warranted by the evidence. City of Valparaiso v. Hagen, 153 Ind. 337, 54 N. E. 1062, 48 L.R.A. 707, 74 Am. St. 305, is not an authority here, for there the sewer emptied into a watercourse, and the question was whether there was an unnecessary fouling of a stream which was the only means for getting rid of the sewage. Here the objection is that the sewage is not carried to the stream which ought to be the proper outlet. Chipman v. Palmer, 77 N. Y. 51, 33 Am. Rep. 566, and Warden v. City of South Pasadena, 168 Cal. 612, 143 Pac. 776, cited by defendants, do not seem to be in point.

As to the overflow from the cesspools, septic tanks, etc.—that is, matters other than surface waters—gathered up by defendant's ditch and drain and cast upon plaintiff's land in injurious quantities, the same must be regarded as amounting to acts of positive trespass, coming under

the fifth division of principles governing the liability of municipal corporations for injuries to private property as laid down by Justice Mitchell in Pye v. City of Mankato, 36 Minn. 373, 31 N. W. 863, 1 Am. St. 671, and as applied in Batcher v. City of Staples, 120 Minn. 86, 139 N. W. 140. A case very similar upon the facts is that of Ulmen v. Town of Mt. Angel, 57 Ore. 547, 112 Pac. 529, 36 L.R.A. (N.S.) 140, where the syllabus reads: "A municipal corporation may be enjoined from emptying a drain which collects surface water from the streets and sink drainage from houses into a dry gully bordering on the property of a citizen, where it creates an offensive odor and percolates to some extent into his well and pollutes the water therein; and the fact that the water in the well was polluted to some extent from other sources is immaterial." The following authorities sustain the right to relief of the owner of premises upon which a municipality deposits sewage under circumstances somewhat similar to those in the instant case: Robb v. Village of LaGrange, 158 Ill. 21, 42 N. E. 77; Chapman v. City of Rochester, 110 N. Y. 273, 18 N. E. 88, 1 L.R.A. 296, 6 Am. St. 366; Demby v. City of Kingston, 60 Hun, 294, 14 N. Y. Supp. 601 (affirmed in 133 N. Y. 538, 30 N. E. 1148). In the last-named case the offending sewer was a storm-water sewer intended to take care of surface water only. But, after the city obtained a water supply, private owners connected their closets and waste pipes with the storm sewer. There, as here, no formal leave of the city was obtained to connect. There the court refused to hold that plaintiff was not entitled to recover damages for injuries prior to the knowledge by the city of the condition causing the injury. The appellate court said: "We think it may be presumed, in support of the verdict, that the city upon the introduction of water, consented to the connection by private parties of their waste pipes with the sewer." There, as here, it was shown that one of the aldermen of the municipality connected a waste pipe with the sewer. There also it was urged that the injunction was improper, because the city could not lawfully enter upon the premises of the parties who discharged the filth into the sewer and stop it, but the court suggested the city could extend the sewer to the open stream.

Defendants now claim that plaintiff cannot prevail for failure to serve a notice upon the village prior to suit, as provided by section 1786, G. S. 1913, and which under Diamond Iron Works v. City of Minneapolis,

129 Minn. 267, 152 N. W. 647, and Frasch v. City of New Ulm, 130 Minn. 41, 153 N. W. 121, is a condition precedent to maintenance of a suit. Neither by demurrer nor answer did the village attempt to raise this defense, nor does it appear to have been suggested to the trial court. But, as already stated, the basis for relief is not negligence of the village or any of its officers. As said in Price v. Oakfield Highland Creamery Co. 87 Wis. 536, 58 N. W. 1039, 24 L.R.A. 333: "It is the invasion of the plaintiff's premises with an offensive foreign substance by means of artificial appliances"—the open ditch and tile drain of the village. That the offensive sewage would not have reached plaintiff's land but for the drain is quite apparent, for the evidence shows that to drain the open ditch and low land in block 13 the tile, in going through the higher ground or the ridge which prevented the flow to the west, had to be laid as deep as four feet below the surface. Nor is this action one for damages, and that seems to be the sort of action referred to in the section mentioned. The damages here asked are merely an incident to the main purpose of the suit, which is to prohibit a continuing nuisance upon plaintiff's property. To the maintenance in equity of such a suit against a municipal corporation, we do not think it essential that a written notice be first given. Where a written notice is required no suit can be begun until ten days after the notice is given, and it is unreasonable to suppose that the legislature intended to withhold for any time whatever the ordinary and proper remedy where a city or village is causing irreparable injury to private property, or is unlawfully imposing a nuisance thereon.

Upon the findings it cannot be said that plaintiff has an adequate remedy at law. The nuisance found is a continuing one. Upon this record we are not concerned with the amount of damages or the proper assessment thereof.

We feel constrained to grant a new trial. Since the findings of fact are somewhat conflicting, the case is not one wherein this court should direct a modification of the conclusions of law.

Order reversed and a new trial granted.